**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
(ROCK HILL DIVISION)
CASE NO. 0:20-mc-00210-MGL**

| | |
|---|---|
| DEIGHAN LAW LLC,<br><br>    Movant,<br><br>v.<br><br>UNITED STATES TRUSTEE,<br><br>    Respondent. | No. 0:20-mc00210-MGL<br><br>U.S. District Court Judge:<br><br>Honorable Mary Geiger Lewis |

**MOTION TO STAY THE BANKRUPTCY COURT'S MAY 19, 2020 ORDER, AS AMENDED BY ITS JUNE 26, 2020 ORDER, PENDING UPRIGHT LAW'S INTERLOCUTORY APPEAL**

Pursuant to Fed. R. Bank. Proc. 9014 and 8007, Deighan Law LLC, f/k/a Law Solutions Chicago, LLC d/b/a in South Carolina as UpRight Law LLC (hereafter referred to as "UpRight Law"), hereby moves the Court to enter an order staying enforcement of the May 19, 2020 Order of the Bankruptcy Court, as amended by the Bankruptcy Court's June 26, 2020 Order,[1] until the final resolution of UpRight Law's pending Interlocutory Appeal.  Pursuant to these Orders, UpRight Law is required to produce to the United States Trustee ("UST") the privileged identities of its clients that are responsive to Interrogatories 14, 16, and 17 on "the later of: August 31, 2020; or 14 days after the district court denies any request for a stay pending appeal." (Exhibit B, Bankr. Doc. 203). UpRight Law hereby moves this Court for a stay of the Bankruptcy Court's May 19, 2020 and its June 26, 2020 Orders pending resolution of its Motion for Interlocutory Appeal (and any appeal granted pursuant to that Motion) (collectively "Interlocutory Appeal") relating to whether it can be compelled to produce the identities of

---

[1] *See* Exhibits A and B (Bankr. Docs. 174 and 203).

1

hundreds of its former and active clients who did not elect to file for bankruptcy, or who have not yet filed for bankruptcy (the "Unfiled Clients").

Under the current procedural posture resulting from the Bankruptcy Court's May 19, 2020 Order (the "Client Identities Order"), as amended by the June 26, 2020 Order, it is possible that UpRight Law could be required to produce the identities of the Unfiled Clients before this Court has resolved the Interlocutory Appeal. The Interlocutory Appeal would effectively be rendered moot if UpRight Law is required to produce the privileged identities of these clients before the Interlocutory Appeal is complete. The only reason that the Bankruptcy Court gave for denying UpRight Law's Motion to Stay enforcement of the Client Identities Order was its belief that UpRight Law's Motion for an Interlocutory Appeal was not likely to be granted by this Court, not because denial of a stay would delay proceedings, be prejudicial to any parties, or not be in the public interest. UpRight Law seeks this stay to preserve the status quo pending the resolution of its Interlocutory Appeal.

**I.     Procedural History**

There has been a lengthy procedural history that has led to this juncture in this matter. That history is fully set out in UpRight Law's Motion for Interlocutory Appeal and is incorporated by reference herein. (*See* Entry No. 1 at 4-13). The Client Identities Order was entered in the Bankruptcy Court on May 19, 2020. UpRight Law timely moved for an interlocutory appeal of that Order on May 28, 2020.[2] (*Id*.). The UST filed an Opposition on June 15, 2020 (Entry No. 2), and UpRight Law filed a Reply on June 22, 2020. (Entry No. 3). The Motion for Interlocutory Appeal is thus fully briefed.

---

[2] Filed in this court on June 3, 2020 (Entry No. 1).

In addition to its Motion for Interlocutory Appeal, UpRight Law filed a Motion to Stay the Client Identities Order in the Bankruptcy Court on May 27, 2020.[3] The UST filed his Opposition to the Motion to Stay on June 17, 2020.[4] The Bankruptcy Court provided an extension of the production deadline through July 15, 2020 in order to rule on the Motion to Stay. On June 26, 2020, the Bankruptcy Court denied the Motion to Stay.[5] However, the Bankruptcy Court also issued an extension of the deadline to produce the identities of the Unfiled Clients through the latter of August 31, 2020, or 14 days after denial of any Motion to Stay filed with the District Court.[6] This Motion followed.

## II.     Argument

### A.  A Stay Pending Appeal is Appropriate Under the Relevant Four-Factor Test.

When considering whether to stay an order or judgment pending appeal, courts consider the following four factors: (1) whether the applicant has made a "strong showing that (it) is likely to succeed on the merits" of its appeal; (2) whether the applicant will be irreparably harmed without the requested stay; (3) whether the stay "will substantially injure other parties interested in the proceeding"; and (4) "where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 425–26 (2009); *see also Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970). When considering these factors, the first two—likelihood of success on the merits and irreparable harm—are the most critical. *Nken*, 556 U.S. at 434.

In the Bankruptcy Court's order denying UpRight Law's Motion to Stay, it did not address the final three factors. (*See* Exhibit E, Bankr. Doc. 202). Instead, the Bankruptcy Court found that the District Court was unlikely to grant UpRight Law's Motion for an Interlocutory

---

[3] Exhibit C (Bankr. Doc. 178).
[4] Exhibit D (Bankr. Doc. 195).
[5] Exhibit E (Bankr. Doc. 202).
[6] Exhibit B (Bankr. Doc. 203).

3

Appeal, stating that UpRight Law had failed to present the District Court with a substantial ground for difference of opinion on either the jurisdictional issue or the privilege issue, and that the resolution of the privilege issue on appeal would not be dispositive of the UST's Motion for Review. (*See id.* at 3-5).

Yet, a proper application of the four factors confirms that a stay should be entered in order to maintain the status quo while UpRight Law pursues an appeal of the Bankruptcy Court's Client Identities Order. It is not disputed that the final three factors support UpRight Law's Motion to stay production of these client identities, and with due respect to the Bankruptcy Court, UpRight Law has presented contestable issues in its Motion for Interlocutory Appeal, and possesses a substantial likelihood of success in its Interlocutory Appeal.

> **1. UpRight Law satisfies the first factor of the analysis because it has met the requirements of 28 U.S.C. § 1292(b) in its Motion for Interlocutory Appeal, and is likely to succeed on the merits of its interlocutory appeal.**

Where a party establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits, provided the other factors also militate in the applicant's favor, then an injunction pending appeal is appropriate. *See, e.g, Par Pharm., Inc. v. TWI Pharm., Inc.*, No. CIV. CCB-11-2466, 2014 WL 3956024, at *2 (D. Md. Aug. 12, 2014). ("To succeed, Par thus does not need to demonstrate that it will certainly win on appeal or that there is a mathematical probability of success. At a minimum, it must demonstrate a substantial case.") As articulated by the U.S. Court of Appeals for the Third Circuit, a sufficient degree of success for a strong showing exists if there is "a reasonable chance, or probability of winning." *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015). Thus, while it is "not enough that the chance of success on the merits be better than negligible, the likelihood of winning on appeal need not be more likely than not." *Id.* (internal quotations and

4

citations omitted)*; see also, Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 844 (D.C. Cir. 1977) (noting that the trouble with a 'strict probability' requirements is it leads to an exaggeratedly refined analysis of the merits at an early stage of the litigation).

The Bankruptcy Court analyzed this factor through the lens of whether this Court was likely to grant UpRight Law's Motion for Interlocutory appeal. The Bankruptcy Court concluded it would not because it believed UpRight Law had not presented contestable issues in its Motion, both as to privilege and jurisdiction, and that the privilege issue would not be dispositive of the litigation. UpRight Law's arguments as to why these questions are contestable, and why they will materially advance the litigation, are set forth in its Motion for Interlocutory Appeal and its Reply brief, which are incorporated by reference herein. (Doc. 1 at 14-15, 17-23; Doc. 3 at 6-11, and 13-15). But UpRight Law wishes to address certain arguments that are particularly germane to the Bankruptcy Court's denial of the Motion to Stay.

### a. Both issues will materially advance the litigation.

A portion of the Bankruptcy Court's Order denying UpRight Law's Motion to Stay asserts that this Court is not likely to grant an interlocutory appeal because the appeal would not be "dispositive of the UST's Motion for Review." (Exhibit E, Bankr. Doc. 202 at 4). However, the Bankruptcy Court applied the incorrect standard. An interlocutory appeal need not be dispositive of the entire matter, but merely needs to "materially advance the ultimate termination of the litigation." *Fannin v. CSX Transp., Inc.,* 873 F.2d 1438, 1989 WL 42583 at 1 (4th Cir. 1989). It is enough that resolution of the issue would "serve to avoid a trial *or otherwise substantially shorten the litigation." In re Trump*, 928 F.3d 360, 371 (4th Cir.), reh'g en banc granted, 780 F. App'x 36 (4th Cir. 2019), and on reh'g en banc, 958 F.3d 274 (4th Cir. 2020) (emphasis added); *see also, e.g.* , *In re Virginia Elec. & Power Co*., 539 F.2d 357, 364 (4th

Cir.1976) (§ 1292(b) appeal appropriate where resolution of controlling question could prevent substantial delay); *Ashmore v. Northeast Petrol. Div.*, 855 F. Supp. 438, 440 (D. Me. 1994) (§ 1292(b) appeal inappropriate where appeal would only determine potential damages, not materially advance litigation).

Here, as argued in UpRight Law's Motion for Interlocutory Appeal and Reply, the resolution of both the privilege issue and jurisdictional issue would substantially reduce the scope of the underlying litigation. (Doc. 1 at 23-24; Doc. 3 at 3-4, 5-6, 12, and 15). Perhaps needless to say, the scope of this litigation will be significantly smaller if it is confined to the debtor, Melissa Hogan, rather than affording the UST the opportunity to "interview and/or depose" hundreds of former and active clients of UpRight Law,[7] and then attempting to adjudicate whether the refunds paid to those clients were reasonable.[8] A reversal of the Client Identities Order would have the practical effect of confining the scope of the litigation to the permissible jurisdictional scope of only those people who have actually filed under Title 11 (*i.e.*, Ms. Hogan), and would certainly materially advance the litigation.

### b. The jurisdictional issue is contestable and UpRight Law has a substantial likelihood of success in prevailing upon it.

On the merits, UpRight Law possesses a substantial likelihood of success on the jurisdictional issue. In its denial of UpRight Law's Motion to Stay, the Bankruptcy Court stated

---

[7] *See* Exhibit F, Bankr. Doc. 164 at 6. In his Opposition to Appellant's Motion for Leave to Pursue Interlocutory Appeal (Entry No. 2), the UST does not dispute that his purpose in seeking the identities of UpRight Law's current and former clients is to "interview and/or depose" them. Instead, he argues that it is premature to discuss the process of how the client identities would be used until UpRight Law complies with the Client Identities Order and provides the names. (Entry No. 2 at 22).

[8] The Order states that the jurisdictional issue would be dispositive of the litigation, but that the privilege issue would not. The correct standard is whether the appeal would materially advance the litigation. Resolution of both issues would materially advance the litigation by reducing the scope of this Motion for Sanctions to what occurred with respect to Ms. Hogan.

6

that the jurisdictional issue is not contestable based on 28 U.S.C. § 157. The Bankruptcy Court reasoned that the "UST's Review Motion seeks review of UpRight's conduct with prospective debtors pursuant to 11 U.S.C. § 526. Therefore, the issues raised by the UST are squarely within this Court's jurisdiction."[9] However, the Court failed to address the fact that that bald allegations of a violation of a Bankruptcy statute are not sufficient to confer subject matter jurisdiction. (*See* Entry No. 3 at 7-11). UpRight Law's briefing on this subject explains why the UST's "information and belief" allegations relating to the Unfiled Clients are not sufficient to confer jurisdiction over these people. *Id*. For that reason alone, UpRight Law should prevail on the jurisdictional issue relating to the Unfiled Clients.

The problems associated with the Bankruptcy Court's jurisdictional analysis run deeper than that. The Bankruptcy Court's Order uses the term "prospective debtor," but that is not a term of art under the Bankruptcy Code, and the Code does not confer jurisdiction over prospective debtors. The Code does use the terms "assisted person" and "prospective assisted persons." *See* 11 U.S.C. §§101 and 526. Tellingly absent from the UST's Motion for Sanctions,[10] however, is any allegation that the Unfiled Clients are actually "assisted persons" or "prospective assisted persons." (*See generally* Exhibit G, Bankr. Doc. 67). Moreover, UpRight Law did not serve as a "debt relief agency" as to these Unfiled Clients, and accordingly Section 526 does not apply, because these people did not file for bankruptcy. As one bankruptcy court explained:

> Section 526's prohibitions apply to a "debt-relief agency." To be a debt-relief agency, a person must provide "bankruptcy assistance." Under section 101(4A),

---

[9] Exhibit D (Doc 202) at 4.

[10] *See* Motion of the United States Trustee for Review of the Conduct of Deighan Law, LLC, Disallowance and Disgorgement of Funds Paid to Deighan Law, LLC, and Other Relief as May Be Appropriate to Include Sanctions with Supporting Memorandum (Bankr. Doc. 67), attached as Exhibit G.

> for services to be bankruptcy assistance, they must be "with respect a case or proceeding under" the Bankruptcy Code. *I interpret that phrase in section 101(4A) to refer to an actual bankruptcy case, even if commenced later, rather than to the possibility of a prospective case that is never filed.*

*United States Trustee v. Howard (In re Stites)*, Adv. No. 15-62393 (lead consolidated case), 2018 WL 1267837, *12 (D. Or. Mar. 9, 2018). Because "bankruptcy assistance" refers only to an actual bankruptcy case, rather than to the possibility of a prospective case that is not filed, UpRight Law did not act as a "debt relief agency" within the meaning of § 526 as to the Unfiled Clients. The Bankruptcy Court simply does not have jurisdiction to adjudicate the reasonableness of attorney fees paid by its clients who did not elect to file, or have not yet filed, for bankruptcy. UpRight Law's briefing on the Motion for Interlocutory Appeal and Reply brief fully explain that any client who is dissatisfied with the refund he or she received has recourse elsewhere, but there is no jurisdiction in the bankruptcy court to review them. Moreover, the UST lacks standing to adjudicate the rights of these people, who are not parties to the Motion for Sanctions. (Entry No. 3 at 11-12).

Given these jurisdictional defects, UpRight Law's Motion for Interlocutory Appeal clearly sets forth a contestable issue, and it has a substantial likelihood of success in its appeal. A stay of the Order requiring production of the Unfiled Clients' identities should be granted to enable UpRight Law to pursue its interlocutory appeal.

### c. The privilege issue is contestable and UpRight Law possesses a substantial likelihood of success on this issue in its Interlocutory Appeal.

UpRight Law also possesses a substantial likelihood of success on the merits relating to the issue of whether the attorney-client privilege and duty of confidentiality shield the production of the Unfiled Clients' identities. UpRight Law's arguments that the privilege issue is contestable are set forth in its Motion for Interlocutory Appeal and Reply and are incorporated

8

by reference herein. (Entry no. 1 at 17-23; Entry No. 3 at 13-15). But UpRight Law wishes to address the Bankruptcy Court's Order denying the Motion to Stay, to the extent that it attempts to distinguish the Fourth Circuit's decision in *In re Search Warrant,* 942 F.3d 159 (4th Cir. 2019).

The Bankruptcy Court's Order states that "the Fourth Circuit did not analyze or determine whether the attorney-client privilege applied to any of the clients whose identities the law firm wanted to protect, but rather found the process of using a filter team to determine whether the privilege applies was inappropriate."[11] However, that is an unduly narrow reading of *In re Search Warrant.* The Bankruptcy Court's Order ignores the Fourth Circuit's analysis relating to the importance of the attorney-client privilege and *its application to client identities*:

> By asking the Law Firm to furnish the Filter Team with a client list — which could be used by Filter Team members to directly contact clients and seek privilege waivers under the Filter Protocol — *the government demonstrated a lack of respect for the attorney-client privilege and the Firm's duty of confidentiality to its clients. In declining to reveal a client list to the Filter Team, the Law Firm relied on its ethical obligations to protect confidential and privileged information relating to its clients. See* Br. of Appellant 37 (asserting that the government's request for a client list ignored the proposition that the Law Firm is "ethically prohibited from disclosing ... the identity of clients when the relationship remains confidential"); *see also* Model Rules of Prof'l Conduct r. 1.6(a) (describing duty of confidentiality). *Such information will sometimes include the existence of the lawyer-client relationship itself. See In re Grand Jury Subpoena*, 204 F.3d 516, 520 (4th Cir. 2000) (recognizing that the attorney-client privilege can "extend to the client's identity"); [1 Geoffrey C. Hazard, Jr. et al., The Law of Lawyering §10.12] (collecting cases where client identity considered confidential or privileged). . . .

*In re Search Warrant*, 942 F.3d at 180–81 (emphasis added). This passage plainly reflects that the law firm was entitled to withhold the identities of its clients based on their privileged and confidential nature. *See also U.S. v. Monnat*, 853 F. Supp. 1304, 1306-07 (D. Kans. 1994) ("The mere fact of consultation with a lawyer may imply personal, family, marital, criminal, or

---

[11] Exhibit E, Bankr. Doc. 202 at 3-4, fn 7.

financial problems of a sensitive, private nature. The client, therefore, may rightly expect his name and finances to be kept confidential as an ethical duty under Rule 1. 6 in some circumstances and in others he may not.") (quoting Report of Federal Committee on Conduct of Attorneys, attached to the *Monnat* decision).

As in *In re Search Warrant,* the federal government in this case seeks the Unfiled Clients' identities for the purpose of communicating with these clients in furtherance of its purported investigation of UpRight Law, the law firm that represents or represented these persons. The Bankruptcy Court's attempt to distinguish *In re Search Warrant* is unavailing, and this clearly presents a contestable question that is appropriate for an interlocutory appeal. In short, UpRight Law possesses a substantial likelihood of success on the merits in its interlocutory appeal. Given the arguments presented above, it should be beyond reasonable dispute that UpRight Law has a substantial case that warrants a stay pending UpRight Law's potential appeal. In fact, the U.S. Supreme Court has encouraged the Courts to take up appeals of this exact nature, stating:

> Moreover, were attorneys and clients to reflect upon their appellate options, they would find that litigants confronted with a particularly injurious or novel privilege ruling have several potential avenues of review apart from collateral order appeal. First, a party may ask the district court to certify, and the court of appeals to accept, an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The preconditions for § 1292(b) review—"a controlling question of law," the prompt resolution of which "may materially advance the ultimate termination of the litigation"—are most likely to be satisfied when a privilege ruling involves a new legal question or is of special consequence, and *district courts should not hesitate to certify an interlocutory appeal in such cases*.

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110–11 (2009) (emphasis added)

### 2. The second factor is met because the Unfiled Clients and UpRight Law will suffer irreparable harm if the stay is not granted.

In briefing before the Bankruptcy Court on the application of the second factor – prevention of irreparable harm – the UST failed to address UpRight Law's argument that this factor supported application of a stay.[12] Moreover, the Bankruptcy Court's Order denying the Motion to Stay did not address it.[13] The fact that neither the UST nor the Bankruptcy Court disputed the existence of irreparable harm is particularly significant, given that prevention of irreparable harm is at the heart of the Court's authority to grant stays pending appeal. *See Nken v. Holder,* 556 U.S. 418, 432 (2009) ("The authority to grant stays has historically been justified by the perceived need to prevent irreparable injury to the parties or to the public pending review.") (internal quotations and citations omitted.)

The UST conceded this point for good reason. If the stay is not granted pending appeal, UpRight Law (and the Unfiled Clients[14]) will suffer irreparable harm for at least three reasons: (1) it will defeat the purpose of further review; (2) it will defeat the confidentiality and privacy rights of the Unfiled Clients; and (3) it will result in significant amounts of disruption to the firm's clients and the firm itself.

### a. Requiring production of the Unfiled Clients' identities would defeat the purpose of the interlocutory appeal.

It is well settled that irreparable harm exists where a party is required to produce privileged information prior to an appeal because it would defeat the purpose of the review. *See,*

---

[12] Exhibit C (Bankr. Doc. 178).
[13] Exhibit E (Bankr. Doc. 202).
[14] UpRight Law's clients are the holders of the privilege. The privilege "generally *must be asserted* for the client by the attorney unless the client directs otherwise." *In re Impounded Case (Law Firm),* 879 F.2d 1211, 1213 (3d Cir. 1989) (where record was silent as to wishes of clients whose files may be subject to search warrant, the law firm was authorized to claim privilege on behalf of these clients) (emphasis added).

11

*e.g.*, *In re Search Warrant*, 942 F.3d at 175 (in ruling that the Law Firm had not established a likelihood of irreparable harm, the district court erred as a matter of law by affording insignificant weight to the foregoing principles protecting attorney-client relationships); *see also Nowak v. Lexington Ins. Co.*, 2006 WL 3613760, *2 (S.D. Fla. June 22, 2006) ("Defendant would be irreparably harmed if this Court requires Defendant to produce the privileged documents. Put simply-once the Plaintiff reviews those documents, the cat is out of the bag."); *In re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir.1997) ("We find, as have several courts, that forced disclosure of privileged material may bring about irreparable harm."); *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*, 881 F.2d 1486, 1491 (9th Cir. 1989) (party that is erroneously required to produce privileged information likely will suffer if erroneously required to disclose privileged materials or communications); *Harper v. Row Publishers, Inc. v. Decker,* 423 F.2d 487, 492 (7th Cir. 1970) (Maintenance of the attorney-client privilege up to its proper limits has substantial importance to the administration of justice, and an appeal after disclosure of the privileged communication is not an inadequate remedy); *In re Von Bulow*, 828 F.2d 94, 98 (2d Cir. 1987) (compliance with discovery order against claim of privilege destroys right sought to be protected).

In the instant case, if UpRight Law is required to produce the identities of the Unfiled Clients, it would defeat the purpose of any review on this very important question of attorney-client privilege and confidentiality. The UST will already have these clients' identities, and the firm's ability to appeal the decision will effectively be moot. For that reason alone, production of this information will result in irreparable harm, and this Court should grant UpRight Law's request for a stay.

### b. Requiring disclosure of these identities will defeat the confidentiality and privacy rights of the firm's clients and jeopardize their privileged communications with the firm.

Divulging the identities of the Unfiled Clients will defeat their confidentiality and privacy expectations. The UST admits to seeking this information to, "conduct interviews and/or depositions" of an untold number of the firm's current and former clients about a personal, potentially embarrassing issue (their interest in filing for bankruptcy).[15] Such "interviews" certainly run the risk that these clients will be asked to divulge privileged communications with their law firm, possibly without even having counsel present. Moreover, the fact that the UST could be averse to these persons in the future (because they ultimately end up filing for bankruptcy) only compounds the problematic nature of the UST's attempt to obtain their identities.

The problematic consequences associated with the disclosure of the Unfiled Clients' identities goes beyond that. Because the Client Identities Order deems the identities of these clients not to be confidential, once they are disclosed to the UST, their identities may become publicly available. That, in turn, could result not only in stigma and embarrassment to the clients, it could also have adverse ramifications for their employment, their access to credit, and any number of other harms which go along with the public disclosure of sensitive financial information that is inherent in the contemplation of a bankruptcy.

Indeed, the *Wall Street Journal* published an article on June 24, 2020 that details potential discrimination that bankruptcy filers face when seeking employment in the private sector, which has become more acute as the job market has tightened with the onset of the global Covid-19 pandemic. *See Wall Street Journal, June 24*, 2020, "Bankruptcy Is Extra Burden for

---

[15] Exhibit F, (Bankr. Doc. 164 at 6).

Some Job Seekers." (Attached as Exhibit H). Such potential harms may serve as a reason that a person who engages a bankruptcy law firm ultimately elects not to file for bankruptcy, and it is understandable that those people elected not to file for bankruptcy are able to maintain confidentiality about their communications with counsel relating to that subject. The UST should not be permitted to defeat the confidentiality expectations of these people in furtherance of a fishing expedition that is outside of its charge.

### c. Requiring disclosure of these identities will result in significant disruption to UpRight Law and the Unfiled Clients.

Requiring UpRight Law to produce the Unfiled Clients' identities would be disruptive to the firm and its clients. For example, UpRight Law would be required, pursuant to South Carolina Rule of Professional Conduct 1.4, to notify the clients of the disclosure of their identities. *See Oracle USA, Inc. v. Rimini St., Inc.*, No. 2:10-CV-00106-LRH, 2010 WL 3789165, at *2 (D. Nev. Sep. 21, 2010) ("the parties and counsel have a duty to notify the holder of a privileged or confidential information of improper disclosures."). Such a process would create significant administrative burdens associated with communicating with hundreds of former or active clients as to why the federal government is seeking their identities, not to mention the burdens inherent with the "interviews and/or depositions" of the clients the UST is ultimately seeking. It would also result in reputation and potential financial harm to clients who express anger or confusion about why their identities are being disclosed to agents of the federal government.

### 3. The third factor is met because there is no substantial harm to other parties in this litigation.

Like the second factor, the UST conceded[16] before the Bankruptcy Court that there is no harm to other parties in this 'litigation.'[17] To the extent that the UST engages in a reversal and now argues that staying the Client Identities Order will result in delay, that is not a legitimate basis to object for at least three reasons.

First, the UST can proceed with the prosecution of the "Motion for Review" in this case without the names of the Unfiled Clients. The UST's effort to use such a motion in an attempt to bootstrap a review of the fees paid by hundreds of *non-debtors* to UpRight Law who have not complained and have nothing to do with Ms. Hogan is not legitimate. Because these clients have not filed, UpRight Law is not a debt relief agency as to them. *See* discussion of *In re Stites*, *supra* at 8.

Second, as was true in *In re Search Warrant*, the UST should have anticipated (if it did not already) that such a wide-ranging request which so fundamentally implicates privilege and confidentiality concerns is "ripe for substantial legal challenges" that could result in significant delays. *See In re Search Warrant,* 942 F.3d at 182.

Third, the passage of time would be *beneficial,* not prejudicial, because it would reduce the number of false positives in the data. The UST's speculative theories relate to allegedly "improper" refunds, which is only potentially an issue involving clients who have not filed for bankruptcy. Yet, despite being warned that the wording of the interrogatories would include *active* clients who had simply not *yet* filed, the UST persisted. With the passage of time, more

---

[16] The UST failed to address the issue in his Objection to UpRight Law's Motion to Stay. Exhibit C (Bankr. Doc. 178).

[17] The "litigation" in this context is not an adversary proceeding, but merely a "Motion for Review" in the case involving a single debtor that has already received a full refund.

15

clients will end up filing for bankruptcy, and this will reduce the total number of clients responsive to his interrogatories.

### 4. The fourth factor is met because the requested stay will serve the public interest.

Finally, addressing fundamental questions about the attorney-client privilege, the duty of confidentiality, and the appropriate scope of the Bankruptcy Court's subject matter jurisdiction would greatly serve the public interest. Neither the UST nor the Bankruptcy Court contested this argument below.

There exists a great public interest in protecting the attorney-client privilege. "The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (internal citations omitted). There also exists a great public interest in ensuring that federal courts are not exercising jurisdiction over matters and persons that has not been bestowed upon them.

The issues associated with the Client Identities Order have significant ramifications for consumer bankruptcy practice (and law practice generally), and an appeal on these issues should be allowed to proceed before these identities must be turned over to the UST. Bedrock principles of attorney-client privilege, confidentiality, and jurisdiction far outweigh any competing interests the UST may have in engaging in the wide-ranging, extra jurisdictional fishing expedition of the sort he seeks here.

### III.  CONCLUSION

For the foregoing reasons, UpRight Law respectfully requests a stay of the Client Identities Order, as amended by the Bankruptcy Court's June 26, 2020 Order, pending a final resolution of its Interlocutory Appeal.

Date: July 15, 2020                                                        Respectfully Submitted,

/s/ A. Todd Darwin
A. Todd Darwin
District Court I.D. No.: 6382
Holcombe Bomar, P.A.
P.O. Box 1897
Spartanburg, SC 29304
(t) (864) 594-5300
(e) tdarwin@holcombebomar.com